Good morning. May it please the Court, Michael Ryan on behalf of William Shannahan. Despite numerous attempts to justify the withholding of every single word contained in thousands of pages of documents, the IRS cannot meet its burden under the FOIA. In reviewing these cases, it's important to remember that the FOIA is a disclosure statute, not a withholding statute. As I will explain, the District Court's decision should be reversed, or at the very least, remanded. There are two appeals at issue here today, and I'm going to be arguing them together. The first appeal, or one appeal, relates to two Hong Kong companies who are not under any investigations whatsoever, and they are called, that will be referred to as the Entities Appeal. And the other appeal relates to two individuals, and that will be referred to as the Chung Appeal. While I'm happy to answer questions the panel may have on all of the issues raised in the Chung Appeal, for purposes of this argument, I thought it would be most useful to focus on the Entities Appeal, because the appeal presents issues that are common to both, and the documents in both cases substantially overlap. And also, these two companies are not on the lam for criminal prosecution? Actually, with respect to on the lam, I'm happy to address the issue of fugitive disentitlement, if you'd like. In our view, Mr. Shanahan is not a fugitive in any sense of the word. Of course. And even more importantly than that, it's an equitable doctrine whether or not to disentitle someone. And here, it's simply the purposes underlying the fugitive disentitlement doctrine would not be served by doing, by disentitling. Why not? Well, because after Deegan, which changed the legal landscape with respect to fugitive disentitlement, the courts focused more on unenforceability of judgments and on prejudice to the opposing party. Here, there's no argument that any judgment that this Court enters can be, can't be enforced against Mr. Shanahan. They can. Can be enforced or cannot. There's absolutely no dispute that whatever happens in this case cannot be enforced, because Mr. Shanahan is not anywhere on the lam. He is in La Jolla, California. More importantly, there's no prejudice to this appellate process. That's the important focus that the government seems to. But Mr. Shanahan is not a real party in interest. I mean, Mr. Shanahan really has no stake, real stake in this case. He's kind of a placeholder. Well, that's actually, I disagree with that, because under the FOIA, the, the identity of the requester is supposed to be irrelevant. It's not supposed to matter. The Supreme Court has made clear in the. But we're talking about for purposes of the fugitive disentitlement doctrine. Well, with respect, I mean, but what the government is trying to argue is that Mr. Shanahan has come in and is trying to get a look at the criminal process, and that's absolutely not correct. Oh, goodness sake. Give me a break. Pardon? Give me a break. Okay. Mr. Shanahan made these FOIA requests on behalf of the Chung's to. Who are under criminal indictment, and it would obviously help them in their criminal case if they got the documents. But that has absolutely. If that was the case, Mr. Shanahan would have made a FOIA request for all of his criminal files related to the Chung's. And he wouldn't have gotten those either. Right. But here, what he's trying to do is trying to get some. Trying to disguise it, basically. There's absolutely no evidence in the record of that. Well, there's common sense. But the bottom line is he was given a civil agent's, an RAR, what we call a revenue agent report, which assess the Chung's for $17 million. And in Mr. Shanahan's experience, and this is undisputed, that normally those revenue agent reports can be appealed. After you get a 30-day letter, you can take it to an IRS appeals process. The IRS. And normally the criminal case would come first, but because the Chung's have fled the jurisdiction, that's impossible in this case. Well, it's not impossible. The government was under no compulsion to file this civil assessment. They chose to do it. They were not composed to. It's not as though statute of limitations are running. The criminal trial cannot take place because the Chung's are not here. Right? That's true. But the civil proceedings did not need to go forward. So your argument is the government should wait for the Chung's to come back within the jurisdiction before they ask for the tax assessment? No, absolutely not. I think that's the argument you just made, to say the government's under no compulsion to ask for their taxes now so long as the Chung's are outside the jurisdiction. The government can do whatever it wants in the civil arena, and we're not saying that they can't bring this. But what we are saying is that the question was that essentially we're trying to hide this, that this is why we're really doing this. And I was just explaining why Mr. Shanahan did it, to the extent that it is all relevant under the FOIA itself. Now, we think that applying, and let me take a step back. With respect to the entities, there's absolutely no allegation or claim against them. This concept that they're somehow controlled by Stephen Chung is simply not supported in the record. The only evidence of that is an indictment, which is admittedly hearsay, and also parts of which have been proven false. In particular, part of this web of corporations that has been proven false in a four-day trial was one of the allegations was that Stephen N.S. Chung, Inc. was the nominee of Stephen Chung, the man. And that took four days of trial, and it was determined that they're not the nominee. So the indictment has already, parts of it, been proven false. And so my only point in making that was that the IRS has tried to say that we're trying to hide something, that this is why we're here. But the bottom line is Mr. Shanahan asked for these documents, with respect to the Chung's, simply because he was issued this 30-day letter. And in his experience, he gets the documents, he's able to go to the IRS appellate office and negotiate some type of reduction in the amount owed. And, in fact, there's evidence in the record where the letter that the IRS sent to Mr. Shanahan says exactly that. Has it been his experience that that occurs when there's a criminal trial pending as well? I don't know the answer to that. There's nothing in the record whether or not that that would make a difference in this case. But we do know in this case that Mr. Becker from Seattle, the Seattle IRS office, did send a letter that basically said normally these things are promptly resolved and settled. And then what he did is he filed a 30-day notice. The problem is this is not a normally. And the reason this is not a normally is that there's a criminal indictment out against the Chung's and they've fled the jurisdiction, which changes the landscape. It may not produce the disentitlement in the sense of the suit not being allowed to go forward. But I think under Deegan we are allowed, even encouraged, to look at various forms of discovery requests with the understanding that we've got a problem because there is a pending criminal prosecution that cannot go forward because of the flight of the people who want the information. I think that that's what Deegan talks about.  I have only found, and the government only points to, I think, two cases that have applied the disentitlement doctrine in the context of a FOIA because Shanahan has an everyman's right to request these documents. And whether or not he represents someone who is or is not a fugitive doesn't. Let's get down to brass tacks. That is to say the government is resisting revealing these things. Essentially, I mean, I could give you sections of the FOIA, but we can kind of cut to the chase, because they're arguing that if they hand over these documents, that will impede them in their criminal case. And are you saying it will not impede them in their criminal case? We're saying, particularly with respect to what we refer to as the third-party documents, which is information that is known to the entities, and they've admittedly said the Chung's know this information as well, that is possessed by them, and that basically that information is already in the possession of the very people they say are going to be using this in a way. So why do you want it, if you've already got it? The reason that we want it, I mean, we were able to, throughout this case, when we saw some of the declarations come in, figure out exactly what it is we have. Or we were able to line up with their declarations and the declaration of Mr. Kahn, Patrick Kahn, the CEO of the entities, and figure out that we know that they possess information. The entire purpose of requesting this, to the extent that it's at all relevant, and it normally isn't relevant, the cases are very clear on that. The Supreme Court has been clear that whether it's going to help or hurt you in litigation is not a consideration, one way or the other. But the reason we did is Mr. Shanahan wanted to arm himself and understand, at least with respect to the Chung's, what information supported the civil RAR. Because in his experience, he's able to actually negotiate a resolution with the IRS Appeals Office. Okay, but you've just made the argument that with respect to some of it, it can't possibly hurt the criminal prosecution because Mr. Shanahan already has the information. Okay, so and then Judge Reinhart says, look, if he already has the information, why does he want the information? He has the information. He doesn't have all the information. He doesn't have every single. But then we're in a different territory. That is to say, the government is saying, with respect to the information that the Chung's and the entities do not already have, handing over that information will impede the criminal investigation. And that might be, that's not necessarily how they've pitched it, because here what they've done is they've withheld every single word of over 5,000 pages of documents. Would you be satisfied if we were to say, you can have everything that you already have, but as to the rest of it that you do not have, we are convinced by the government and by the judge below, who seems to do a pretty careful job, that that is a sufficient threat to the criminal prosecution. I mean, that ends you up in exactly where you are now. That is to say, we're giving you nothing other than what you already have. Well, and I think what would be required if that was the outcome here, I mean, if it's we're entitled to the third-party documents that we've already demonstrated on. You've already demonstrated that you have. We have, and the information that we have. Not the identical documents that I think that they're trying to say the way the court in Lyon Raisins held. We think it's more information no one are possessed by. But you have to remember here the judge allowed a representative sample to occur. So what we only have here is 500 pages out of essentially 5,000 pages. So extrapolating outward, the way we figured it out, there's approximately 137 pages of documents that we would be entitled to, that we were able to establish that we actually have or possess information. Yeah, but I'm not sure I understood the answer yet to my question. If you get an order from us to the district court that says, would you please order the IRS to hand over to Mr. Shanahan or to the entities copies of documents that you know that Mr. Shanahan and the entities already have, what possible purpose does that serve? Well, we're not asking for the exact documents back. That's not what we're asking for. Because FOIA is not focused on documents, it's on information. But with respect to the documents that you already have, what are you asking? What we're saying is, what we're trying to say is, we're trying to demonstrate that the government has said you're not entitled to a single word contained in any of these files. And the reason is... But Judge Fletcher has asked you a specific question, not what you were trying to say in the case. Would you be satisfied with what Judge Fletcher asked? Would you be satisfied? If the court ordered the production of the third-party documents to the extent that we have possession and knowledge and information of... But you just went way wider than my question was. My question is, as to the documents that you have, not that you have information about, but documents that you actually have, if we were to order the district court to order the IRS to hand those over, but only the documents that you already have, what possible purpose does that serve? Well, it serves the purpose, to some extent, of the FOIA, which is... I mean, these exemptions are narrowly construed and they're supposed to be explicit and exclusive. And what we have here is a blanket... I understand that statement. The FOIA doesn't ask, really, what do you want it for, but I'm asking you what you want it for. I mean, I cannot conceive how your client would be happy to have handed over by the government documents that are already in his possession. No, I mean, we would not be satisfied. I mean, I think that would be a step towards in the right direction because I think that... Why is that even a step in the right direction from your client's perspective? If you're talking about documents versus information, that's the difference here because the FOIA focuses on information and not documents. So to say that we get the documents back, the very same documents back, that we may possess is one thing. It's completely different than saying that we get this factual information contained in documents that maybe other materials can be redacted out or segregated out to the extent that they contain analysis and things like that. That's a different issue, in my opinion, because... Yeah, it is in mine, too, and I'm inclined to agree with the district court that, well, you know, there's a real possibility that it will impede the government in its criminal investigation. And I think that to the extent that that carries weight, it carries much more weight with respect to the government documents, the IRS-generated documents. But when it comes to this third-party information and third-party documents, there were some serious issues that we had with respect to the way that the judge ruled on the third-party issues. With respect to that issue, he had essentially engrafted 7D concerns into 7A. And as the Supreme Court made clear recently in the Milner case, these... A case I really like. Exactly. And to some extent, looking at your dissent in that case, these are narrowly construed, and this engrafting is not what FOIA is supposed to do. Now, then we get into the lye and raisins questions of identity, and we've talked about that. But then I'd move on to, in any event, I think there's some serious factual issues about whether or not these third-party documents would interfere with law enforcement proceedings, because there's three bases as given for withholding them, but only two are really discussed. The MLLA, which is... Wait a minute. How long do you want for rebuttal? I'll do three minutes for rebuttal. The MLLA documents, which are this mutual legal assistant, which was never even provided to the district court. There seems to be an inconsistency in the declarations as to the terms of these, of what is or is not prohibited. And then confidential source documents, and there was a grafting from 7D into 7A in Exemption 3. But there's nowhere in the record is there any indication of which documents are confidential source. The district court simply says a number of them are. So we don't know which exactly documents are considered confidential source. So we think there are issues of fact as to whether or not they could prove any interference with any proceeding as a result of that, because we simply don't know which documents they're talking about. So to some extent, there was no factual basis for the district court to conclude as it did. And one last point with respect to the third-party documents, that one of the arguments that the district court credited was this concept of, well, people may have given information and you may know about it, but you'll be able to, by process of elimination, figure out who gave it to us. And that essentially requires Mr. Bellis to declare as to the record-keeping practices of the entities, which he simply had no ability or foundation to do. It's pure speculation. And speculative harms are not going to satisfy this Court's decisions in Wiener and other cases that deal with what you need to do to establish harm. We're down to two-and-a-half. We'll give you three minutes. I will reserve the remainder of my time. May it please the Court, Randolph Hutter for the Internal Revenue Service. I would say good morning, but good afternoon. There are two points I would like to make right off the bat. But we could not use your full 20 minutes, Senator. Excuse me. But there's no requirement that you use your full 20 minutes. I will not keep a lecture in the evening longer than necessary. Judge Rawlinson, the point is whether the documents are generally turned over as freely to the taxpayer when there is a criminal prosecution also going on. And the answer is there is not. And the Chung's were not particularly cooperative in this case. We had to subpoena information, and we had to get it from other sources. And when the taxpayer is not very cooperative and leaves the country, of course, then the IRS tends not to be that cooperative either, but particularly when there's a criminal prosecution pending. Is there any realistic chance that the Chung's will return to be prosecuted? I can't answer that question. I can't imagine why they would, frankly. That's a very interesting answer, then, because if there's no realistic possibility that they will ever return to be prosecuted, why does the government care about preserving its ability to prosecute? That is to say, your entire argument is premised on handing over the documents will interfere with the criminal prosecution. Well, we can't possibly know, but it would be a horrible thing to say. I can make a pretty good guess. Okay, you're not likely to come back. We'll give you everything. And then they come back, and they've got all the answers ready, and they've got our case in front of them, and we lose or something like that. It's a much worse case. So the government is shooting itself in the foot in that situation. Also, I'd like to address what Mr. Kahn supposedly said. You don't really lose if they know what you're doing? Oh, no, no, no, no. We wouldn't lose at all. I can't say that. This is a wonderful system of justice, and if they're guilty, they'll be convicted. We don't want to tip our hand and give them the opportunity to come back fully loaded, as it were. You don't want to make it more difficult for yourself to prosecute. Absolutely not. Absolutely not. The law is designed to not require the government to tip its hand. Here's a question I have in reading. I'm not sure how to pronounce it. I'll pronounce it Deegan. Justice Kennedy's opinion is pretty clear that with respect to civil discovery requests, a court is entitled to consider the fugitive status of the people who are seeking discovery and who are simultaneously fugitives. All right. Yes. Justice Kennedy's very clear in saying, well, you know, the fugitive disentitlement doctrine, if they just say you can't bring a lawsuit or whatever, is a pretty blunt instrument and that there are more subtle ways that things are going to be protected and so on. Yes. He's talking about civil discovery. He's not talking about FOIA. Can we bring that line of reasoning that Justice Kennedy is giving us with respect to civil discovery into FOIA? Well, as we've discussed in our brief, this case is distinguishable from Deegan for a number of reasons, and that is that, number one, the defendant in the Deegan case was – well, that's the party in the Deegan case was a defendant. The government was seizing his property, and he was unable to even file an answer in the case to defend himself. And the court says that that's a ridiculously harsh sanction in that case, and we don't have that. Mr. Deegan's – or the defendant in that case, his constitutional rights were implicated, and he – the court was very worried that he wouldn't even get a chance to defend himself. And in this case, there are no constitutional rights implicated. You know, I asked a fairly specific question. About the – You haven't answered it yet. My question is, Justice Kennedy discusses what may be done with respect to civil discovery. I'm asking whether that discussion can be moved over and applied to FOIA discovery. I think that it's hard to correlate because this involves criminal discovery, if any, and criminal discovery is much more limited. No, you're still not answering my question. Maybe that there's no answer in the case law, and we're going to have to, you know, I'll say make it up. Write a considered opinion that's building on established case law with another way of saying make it up. Okay. Yes, yes. Well – I found no case on point. No, I find no case on – I've come across no case on point dealing with that. And I'd also like to mention, of course, that since Deegan, other courts in this court have applied the Fugitive Disentitlement Doctrine. And a case in this court, unpublished, said that Deegan didn't change anything at all. It simply rejected an extension of the Fugitive Disentitlement Doctrine. Not that it carved out a new interpretation in particular, and not that it limited the doctrine. Well, Deegan doesn't necessarily harm your position. Oh, no, I don't think it does. I think it's so distinguishable from this that I don't think it harms this case at all. No, I think what Judge Fletcher was alluding to is that in the process of deciding the Deegan case, the court suggested perhaps that the tools that are used in civil discovery may allow for the use of the Fugitive Disentitlement Doctrine in a way, in a civil context. Or – Or to, you know, protective order. Allow or restrict. Right. Both. Well, you could stay, for instance, or could you, you know, in some way delay the suit. I guess stay is the best way to put it. You know, they talked about protective orders, but the question is, could you delay or stay the FOIA case until after? Instead of dismissing it, it would prejudice. Could it be stayed until after the criminal prosecution? Well, Your Honor, there's nothing stopping him from filing another FOIA request and another FOIA suit later on, sometime down the road, should he come in and should he decide that the criminal discovery rules are not giving him what he wants. Criminals apparently are rather prone to still filing FOIA requests to try to get more information. So dismissing this appeal would not have a race judicata effect, for instance, on anything. And he could do what he needs to do, what he feels he wants to do, if he would only come back to this country and, if you will, face the music. And that's what's stopping the whole proceeding coming forward. Deegan makes a point. Let me ask a practical question. How many assets do the Chung's have or the entities have in this country that are accessible, if in fact you get a tax judgment? I don't know, Your Honor. My understanding was that the majority of the assets were in Hong Kong. But I do not know. I think there's evidence that assets were transferred here. There was property purchased here. But in terms of ratio relation, I do not know. And does the government have the ability, if they get a civil tax judgment against them, to enforce that against property in Hong Kong? In Hong Kong? I doubt that. Without maybe an agreement from the Hong Kong government. But the government does have the ability to proceed with collection in this country and can seize the documents. And, again, if Mr. Chung refuses to show up and defend himself, the government can take the property. And that's not on the table. I haven't heard of any collection being undertaken, but it's a possibility. Well, you can't yet. I mean, you're still, okay. It's a possibility. Counsel, do you agree with opposing counsel's representation that there was a trial resulting in the determination that Mr. Chung was not the nominee for the corporations? Was that there was a trial? He said there was a four-day trial. That was an earlier case? I don't know. I don't know. I'm asking you, do you agree with his representation that there was a four-day trial, and as a result of that trial, there was a determination that Mr. Chung was not the nominee of the corporations? I am not entirely familiar with the holding in the earlier case. But, you know, we're not trying to apply an alter ego test. We're not trying to pierce a corporate veil here. We're trying to show practical considerations that these entities and the Chung's exchange information as a matter of course. So that's a practical reason to apply the Fugitive Disentitlement Doctrine as a sanction against the Chung's and against the entities because they have the same interests and they're working for the same goal. And therefore, to dismiss one and not dismiss the other would allow an end run around the Fugitive Disentitlement Doctrine, and that would not be equitable. If you would like me to move on to FOIA, I would just like to stress that our argument there really, our strongest argument there is the Exemption 7A. And the Exemption 7A, the legislative history shows that its primary purpose was to prevent harm to the government's case in court. FOIA is not intended to be a private discovery tool. It is not, the Exemption 7A is to prevent earlier or greater access to agency investigator files than taxpayers would otherwise have. And it prevents, it exempts from disclosure records or information compiled for law enforcement purposes to the extent that production of such documents could reasonably be expected to interfere with enforcement proceedings. Does that same rationale apply to the documents that were the basis for the revenue report, for the report? Absolutely. Absolutely. Why? Well, that's the statute. That's the words of the statute I'm using there. They can be exempt to the extent that they could reasonably be expected to interfere with enforcement proceedings. That's the language of the statute. But weren't some of the documents that were the basis for the Revenue Agents Report already provided? And if so, why wouldn't the balance of them be available? No, to my knowledge, they were not provided. Some were released based upon the idea, the IRS made a determination that some of them, in fact, were not covered by an exemption, and those were released to the CHUNGs. But by and large, all of the documents that serve as the basis of the criminal investigation and prosecution were not released to the CHUNGs. And so it's not a question of why were some and why were not others. They have not been released. And they will not be released because they provide the basis for the criminal prosecution and would tip the government's hand, put us at a disadvantage by showing the strategies and the analysis ahead of time before we can even address the... I mean, the CHUNGs have even refused a face-to-face interview, of course, with the IRS. So everything's at a standstill. Why should it be a one-way street where all of a sudden they start getting documents and we get nothing? So that's our basic position there. What ages are the CHUNGs? I'm sorry, I have no idea. Okay. I have no idea. If the Court has any other questions? No, thank you. Very well. Thank you. Judge Rawlinson. I'd like to clarify, to the extent I may have misspoke, there was a four-day bench trial, and the question was whether or not a company called Stephen N.S. CHUNG, Inc. was the nominee or alter ego of Stephen CHUNG. And that is the same allegation made in the indictment with respect to the entities. Was it a different entity? Is that what you're saying? It was. So there's not been a trial regarding the entities that are parties to this case? No, Your Honor, and I wanted to be clear, but they're part of the same web of corporations that are alleged in the indictment. But a different corporation, in fact. Yes, and I wanted to be... Do you know how old the CHUNGs are? I believe Mr. CHUNG is in his early to mid-70s, and Ms. Sue is slightly younger. But they're not spring chickens by any means. But I don't know the exact ages. They're not in any rush to return to the United States? I don't know. But in other words, if they want their criminal trial, they'd better hurry back. I think that's probably a fair statement. I would like to respond to one point where counsel said that if we got this information, that the CHUNGs would be, quote, unquote, fully loaded and they would understand the entire criminal case. What's at issue here is approximately 5,000 pages of documents. And that is, in my estimation, as best I can tell, about two banker's boxes worth of documents. The criminal... There's declarations in the record from Janet Freeman that talk about 96 boxes in a locked office and then 29 additional boxes of MLLA documents. It's 130-some-odd boxes of documents. And they're saying if we get, you know, even with respect to the third-party documents, one half of one box, that we know the entire case against the CHUNGs. Well, you know, the volume is kind of misleading. I mean, all I need is one page of the sacred formula for making Coca-Cola and I'm in business. It may be that there are about three documents that would totally take care of any problem you have. The volume doesn't necessarily tell us anything. But going back, you know, I think that's true, but I think that's where segregation comes in. And here they haven't segregated anything. They've basically said, even if you have the information, we don't have to segregate it. Here's my fundamental question. It seems to me that if you're right and that you're entitled to a fair amount of this information, your client, the CHUNGs, have been advantaged in this process in terms of getting discovery compared to what they would get if they had stayed to be prosecuted. It just doesn't make any sense that by becoming a fugitive you get more advantage instead of less. Well, I think that problem stems from the manner in which the IRS, if I may, I see I'm. Yeah, please go ahead. In the manner in which the IRS had conducted the civil examination. If the IRS had conducted an independent civil examination, then I don't think there would be this blending of the two, the criminal and the civil. But what appears to have happened here is that Ev Stone, Miss Ev Stone, the agent, the IRS revenue agent, borrowed heavily from Miss Molly Mahoney's reports, and she was the IRS agent to be distinguished from Molly Mahoney, who's the declarant in this case, seemed to have borrowed heavily from that and therefore didn't undertake any independent investigation. And I think, you know, this idea that the whole purpose behind this is to get a look inside the criminal, I don't think that that's, it's not accurate. And with respect to the entities, I mean, they're simply entitled to know what the government knows about them. Well, all they have to do is come back and have their criminal trial, and then I guess they get everything they want. But that may be true for the Chung's, but the entities aren't under indictment. There's no allegations against them. They're separate and apart. The only thing that they have in common with the Chung's outside of the indictment is that they're represented by the same attorney. Okay. Thank you. Thank you. Thank you very much. Case just argued will be submitted. The court will stand at recess for the day.
judges: Reinhardt, Fletcher W. , Rawlinson